# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MOHAMED AL-SIDDIQI,

                Petitioner,

     -vs-

TODD NEHLS,
**Sheriff of Dodge County, Wisconsin,**

THOMAS POLSIN,
**Deputy Jail Administrator, Dodge County Detention Center,**

DEBORAH ACHIM,
**Chicago Field Office Director Immigration and Customs Enforcement Department of Homeland Security,**

                Respondents.

Case No. 07-C-728

## DECISION AND ORDER

The petitioner, Mohamed Al-Siddiqi ("Al-Siddiqi"), was detained by Immigration and Customs Enforcement ("ICE") officers on January 10, 2007 and charged with violating the terms of his student visa. An Immigration Judge ("IJ") ordered that Al-Siddiqi be deported to Qatar, but Al-Siddiqi appealed. The Board of Immigration Appeals ("BIA") upheld the deportation order, but Al-Siddiqi appealed to the Seventh Circuit and obtained a stay of removal.

The IJ also ordered Al-Siddiqi released on bond pending the outcome of his deportation proceedings. However, ICE refused to accept the bond and release Al-Siddiqi

despite repeated attempts to post the bond since last February. Apparently, ICE refused to honor the bond because it learned that Al-Siddiqi has ties to a network of terrorist organizations. Accordingly, Al-Siddiqi brought the instant petition for habeas relief under 28 U.S.C. § 2241.

Finally, as discussed below, the BIA recently granted respondents' emergency motion to reopen removal proceedings. Therefore, the BIA remanded the case to the IJ for further proceedings on the issue of voluntary departure. Despite this most recent development, Al-Siddiqi argues that ICE must accept the bond previously set at $60,000. For the reasons that follow, the Court disagrees, and Al-Siddiqi's petition is denied.

## BACKGROUND

Al-Siddiqi is a 24-year old citizen and national of Qatar. He was admitted to the United States on a student visa on July 27, 2002. His status was terminated in December 2006 for failure to maintain a full caseload.

On January 10, 2007, Al-Siddiqi was arrested at his home by three ICE agents. ICE decided to detain Al-Siddiqi without bond. On January 26, Al-Siddiqi was present at a group removal hearing. The IJ ordered that Al-Siddiqi be removed to Qatar. The IJ set bond at $15,000. On February 26, Al-Siddiqi filed a timely appeal with the BIA. While both parties reserved appeal of the bond decision at the hearing, neither party appealed that part of the IJ's order.

In mid-February, a friend of Al-Siddiqi attempted to post the bond with ICE in Chicago. Officials told the friend that the bond could not be posted until an appeal was filed.

After the appeal was filed on February 26, the same friend attempted to post the bond on March 2. Officials refused to accept the bond because the person attempting to post the bond was not a lawful permanent resident or United States citizen. Later in the day, another friend attempted to post the bond. This person was a lawful resident, but officials refused the bond because it was too late in the day to process the bond. On March 5, friends of Al-Siddiqi were told not to bother trying to post the bond without an order from a judge.

On or about March 8, the Department of Homeland Security ("DHS") moved to reconsider the bond. On March 8, a friend attempted to post the bond again, but was told it would not be accepted because DHS filed a motion to have the bond revoked. On March 9, Al-Siddiqi's counsel spoke to a deportation officer who stated that the bond was reconsidered and revoked by the District Director due to "changed circumstances." (Docket No. 3, Exhibit C).

Just before filing its motion to reconsider, ICE received a letter from the FBI regarding Al-Siddiqi. The letter indicated that the FBI's counter-terrorism division was conducting surveillance on Al-Siddiqi and considered him a threat to national security. (Docket No. 7-3 at 9-10). The FBI requested that ICE use "all available legal recourse to prevent the release of Al-Siddiqi from United States Government custody until deported from the United States." (Docket No. 7-3 at 9). Al-Siddiqi is also considered a flight risk in light

of the pending removal proceedings and his failure to be reinstated as a non-immigrant student. (Docket No. 7-3 at 9).[1]

On May 16, the IJ conducted a bond hearing and ordered the bond reinstated in an increased amount of $60,000. (Docket No. 13, Exhibit A). ICE filed a notice of intent to appeal the IJ's bond determination. On May 18, just two days later, the BIA denied Al-Siddiqi's appeal and upheld the deportation order. (Docket No. 13, Exhibit B). Accordingly, ICE withdrew its notice of intent to appeal, stating that Al-Siddiqi "is now the subject of an administratively final order. As such the BIA lacks jurisdiction over the bond proceedings and appeal." (Docket No. 28, Lehman Declaration ¶ 15). However, on May 21, Al-Siddiqi filed a Petition for Review and Motion for Emergency Stay of Removal with the Seventh Circuit. (Docket No. 13, Exhibits C and D). On June 7, the Seventh Circuit granted Al-Siddiqi's motion for an emergency stay. (Docket No. 13, Exhibit E).

On June 14, Sher Afgan Sharwani ("Sharwani"), a U.S. citizen and friend of Al-Siddiqi, attempted to post the $60,000 bond with ICE officials in Chicago. ICE refused to accept the bond, stating that the "bond was no longer valid." On June 18, counsel for Al-Siddiqi spoke with George Hernandez ("Hernandez"), ICE's Detention and Removal Supervisor in Chicago. Hernandez said that the bond was no longer deemed valid per the direct instructions of DHS Assistant Chief Counsel Seth Fitter ("Fitter"). Fitter informed Al-

---

[1] The section chief wrote: "Al-Siddiqi transferred between four different schools to maintain enrollment. Al-Siddiqi's own admission revealed he had a failing grade point average for the courses in which he had enrolled. Al-Siddiqi only seemed to want to be enrolled on paper. To this date, Al-Siddiqi has not completed any meaningful education." (Docket No. 7-3 at 9).

-4-

Siddiqi's counsel that the bond was no longer valid because the removal order became administratively final when the BIA denied his appeal on May 18.

On September 28, ICE filed an Emergency Motion to Reopen and Remand with the BIA. ICE sought to reopen the administrative proceedings to address the issue of Al-Siddiqi's voluntary departure. Al-Siddiqi did not oppose ICE's motion, but requested that a remand be conditioned upon the BIA ordering that DHS accept the $60,000 bond. On October 15, the BIA ordered a remand but rejected Al-Siddiqi's request regarding the bond: "We realize that [Al-Siddiqi's] non-opposition appears contingent upon this Board ordering the DHS to accept the $60,000 bond, but removal proceedings are separate from bond proceedings and we may not consider the respondent's request in the context of these removal proceedings." (Docket No. 28, Lehman Declaration ¶¶ 16-17). In light of this remand, respondents moved to dismiss Al-Siddiqi's proceedings in the Seventh Circuit for lack of jurisdiction.

**ANALYSIS**

**I.    Pre and post-removal detention**

The detention of an alien prior to a final order of removal is governed by INA § 236, 8 U.S.C. § 1226. Al-Siddiqi was detained by ICE after his arrest pursuant to this statute. The IJ ordered Al-Siddiqi's release upon the posting of a $60,000 bond pursuant to INA § 236. *See* § 1226(a)(2)(A) (alien may be released on bond of at least $1,500 pending a decision on whether the alien is to be removed from the United States).

Respondents argue that when the BIA upheld the deportation order on May 18, Al-Siddiqi's detention was no longer governed by INA § 236. Respondents argue that at that point, Al-Siddiqi's detention was governed by INA § 241, 8 U.S.C. § 1231, and as a result, his bond was no longer valid. Validity of the bond aside, respondents are wrong on this point. INA § 241 governs "post-removal" detention. It only applies during the "removal period," which never commenced in this case because Al-Siddiqi filed a petition for review and obtained a stay of removal from the Seventh Circuit. *See* § 1231(a)(1)(B)(ii); *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221, 1224 (W.D. Was. 2004) ("an alien is not subject to INA § 241 detention until the removal period begins. . . . Because Petitioner's removal order has been stayed by the Ninth Circuit pending its review of the BIA decision, the 'removal period' has not yet commenced, and Petitioner therefore is detained pursuant to INA § 236"). Therefore, Al-Siddiqi's detention is and continues to be governed by INA § 236.

## II. Jurisdiction

Al-Siddiqi attempts to proceed under the general habeas statute, 28 U.S.C. § 2241. He argues that his continued detention despite the IJ's bond determination violates his Fifth Amendment rights to due process of law. *See Reno v. Flores*, 507 U.S. 292, 306 (1993) (aliens entitled to due process of law in deportation proceedings). Both parties presume that the Court has jurisdiction under § 2241 to adjudicate Al-Siddiqi's claims. For the reasons that follow, the Court has serious doubts about its jurisdiction in the instant case.

The Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA") dramatically reduced the jurisdiction of federal courts to review government

decisions regarding immigration. For example, INA § 236(e) provides that the "Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e). As noted above, Al-Siddiqi's detention is governed by INA § 236. And as the Seventh Circuit observed, the second sentence of INA § 236(e) "precludes review of the Attorney General's decision to deem [an alien] ineligible for release under § 1226(c)(2) (*or any other source of authority to grant bail*)." *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (emphasis added).

The Supreme Court clarified that § 1226(e) "does not bar [a] constitutional challenge to the legislation authorizing . . . detention without bail." *Demore v. Kim*, 538 U.S. 510, 517 (2003); *see also Hussain v. Gonzales*, 492 F. Supp. 2d 1024, 1031 (E.D. Wis. 2007). § 1226(e) only precludes challenges to discretionary or operational decisions of the Attorney General regarding detention without bail. *Id.* at 516-17; *Parra* at 957. Here, Al-Siddiqi is not challenging the legislation that authorized his detention without bail. In fact, Al-Siddiqi finds *support* for his position that he is entitled to release in that very same statutory and regulatory framework. He obtained a favorable order from the IJ granting his release upon the posting of a $60,000 bond. What Al-Siddiqi really challenges is the Attorney General's decision to disregard the IJ's order and refuse to accept the bond. This seems like a discretionary decision that is not subject to review pursuant to § 1226(e).

-7-

In the instant case, the Attorney General has legitimate justification to ignore the bond determination, rooted in national security interests. It is not far-fetched to suggest that Congress would vest the Attorney General with such authority. However, the Court recognizes that suspension of the writ of habeas corpus has serious constitutional implications. *See, e.g., Parra*, 172 F.3d at 957 (unnecessary to decide whether § 1226(e) "should be understood as an effort to 'suspend' the writ of habeas corpus – the *original* writ under Art. I, 9, cl. 1, the Great Writ, which is a device to prevent detention by the Executive Branch without trial"). Where a provision precluding review is claimed to bar habeas review, courts require a particularly clear statement that such is Congress' intent. *See Kim* at 517 (citing *INS v. St. Cyr*, 533 U.S. 289, 308-09 (2001)). Such language is not apparent in § 1226(e).

Therefore, despite the Court's conclusion that it lacks jurisdiction to entertain Al-Siddiqi's petition, the Court will proceed to discuss alternative grounds to deny the relief sought by Al-Siddiqi. "It is a familiar tenet that when [a claim] presents a jurisdictional quandary, yet the merits of the underlying issue, if reached, will in any event be resolved in favor of the party challenging the court's jurisdiction, then the court may forsake the jurisdictional riddle and simply dispose of the [action] on the merits." *United States v. Stoller*, 78 F.3d 710, 715 (1st Cir. 1996).

### III. Exhaustion of administrative remedies

After the BIA granted the respondents' emergency motion to reopen removal proceedings, Al-Siddiqi's removal proceedings will start over again from square one. Al-

-8-

Siddiqi did not oppose the respondents' motion, but only attempted to have the BIA issue an order requiring that DHS accept the bond. The BIA refused this request, and on October 15, ICE issued another initial custody determination that Al-Siddiqi should be held without bond pursuant to INA § 236. (Docket No. 30-4). This determination expressly states that Al-Siddiqi can seek review of the initial custody determination before an IJ. *See, e.g.*, 8 CFR §§ 236.1, 1003.19. Al-Siddiqi acknowledges that he has an avenue for administrative relief, but insists that the original bond is valid and must be enforced.

Exhaustion in this context is not jurisdictional. *See Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (exhaustion provision in INA does not cover challenges to preliminary custody or bond determinations, which are distinct from final orders of removal). "Where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). The Court must balance the individual and institutional interests involved, taking into account "the nature of the claim presented and the characteristics of the particular administrative procedure provided." *Id.* at 146. The general rule is that parties must exhaust "prescribed administrative remedies before seeking relief from the federal courts." *Id.* at 144-45.

Exhaustion may be excused when (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite time frame for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the

agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised. *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002).

The last bond hearing in Al-Siddiqi's deportation proceedings took place over five months ago. The decision to grant or deny release on bond is a fact-specific inquiry. It is possible that circumstances have changed such that an IJ would determine that Al-Siddiqi should be detained without bond. *See, e.g., Duvall v. Elwood*, 336 F.3d 228, 232 (3d Cir. 2003) (courts should require exhaustion where the agency "could well resolve any controverted matter without the need for involvement by the federal courts"); *Gonzalez*, 355 F.3d at 1017 ("as a matter of comity, the Agency should have the opportunity, without reaching the constitutional issue, to provide the petitioner the ultimate relief requested in the first instance"). Acting now to circumvent that process would undermine the twin purposes of exhaustion: "protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145.

Obviously, the concern is that exhaustion may be futile in light of what transpired previously. However, the futility exception is met only when there is "no reasonable prospect that [the petitioner] could obtain any relief" before the administrative agency. *Health Equity Res. Urbana, Inc. v. Sullivan*, 927 F.2d 963, 965 (7th Cir. 1991). Even in light of the prior proceedings, the Court is not persuaded that Al-Siddiqi can meet this heavy burden.

DHS first refused to enforce the bond because new information came to light about Al-Siddiqi's possible terrorist connections. Therefore, DHS moved to reconsider the prior

bond determination. Then, DHS appealed the adverse bond determination, but withdrew their appeal when the BIA upheld the deportation order. DHS' subsequent legal position was that the bond was no longer valid because Al-Siddiqi was subject to a final order of removal. As discussed above, DHS was mistaken because Al-Siddiqi obtained a stay of removal. But just because DHS was wrong as a matter of law does not mean that their position was unreasonable. *See, e.g., Quezada-Bucio*, 317 F. Supp. 2d at 1223 (recognizing different viewpoints on whether detention shifts from INA § 236 to INA § 241 when the order of removal becomes final or rather when the removal period begins). More to the point, just because DHS previously acted contrary to the immigration laws does not mean that it would do so during the remainder of these proceedings.

Modern immigration law is "labyrinthine" in nature, "a maze of hyper-technical statutes and regulations that engender waste, delay and confusion for the Government and petitioners alike." *Drax v. Reno*, 338 F.3d 98, 99 (2d Cir. 2003). Given the complexity of this body of law, the Court should and will defer to the expertise of the relevant administrative agency. *See Gonzalez*, 355 F.3d at 1017 (INS has particular expertise in interpreting the INA); *McCarthy*, 503 U.S. at 145 ("Exhaustion concerns apply with particular force . . . when the agency proceedings in question allow the agency to apply its special expertise"). Al-Siddiqi has further administrative remedies he can pursue, by which he may obtain the relief he seeks in this Court.

## IV. Due Process

As noted above, aliens are entitled to due process under the Fifth Amendment during the course of deportation proceedings. *See Reno*, 507 U.S. at 306. The substantive component of due process forbids the government from infringing on certain fundamental liberty interests unless the infringement is narrowly tailored to serve a compelling government objective. *Id.* at 302.

As the Supreme Court observed in *Kim*, mandatory detention *without a bail hearing* during removal proceedings under INA § 236(c), 8 U.S.C. § 1226(c), is a constitutionally permissible part of the removal process. *Kim*, 538 U.S. at 531; *see also Parra*, 172 F.3d at 958 (Section 1226(c) constitutional as applied to alien who conceded he was removable based on criminal conviction). Al-Siddiqi's detention is not governed by § 1226(c), which provides for the *mandatory* detention of criminal aliens without bail. Rather, Al-Siddiqi's detention is governed by § 1226(a), which allows for an administrative procedure wherein the detained alien can request release during removal proceedings after posting an appropriate bond.

However, *Kim* is still instructive in the context of Al-Siddiqi's due process claim. *See Ali v. Achim*, 342 F. Supp. 2d 769, 774 (N.D. Ill. 2004) (analysis in *Kim* relevant even though petitioner's detention governed by § 1226(a)). In fact, Al-Siddiqi's detention without bond in the instant case is analogous to a criminal alien subject to detention under § 1226(c). In other words, because DHS erroneously disregarded the IJ's rulings that Al-Siddiqi be released on bond, the end result is that Al-Siddiqi's pre-removal detention to this point is and

has been, rightly or wrongly, mandatory. It is as if Al-Siddiqi never had a bond hearing in the first instance.

As mentioned above, the FBI urged for Al-Siddiqi's continued detention in light of suspected ties to a network of terrorists. The "rationale for detaining aliens involved in terrorist activity pending completion of removal proceedings is as strong as it is obvious. National security concerns overwhelmingly support such a policy." *Hussain*, 492 F. Supp. 2d at 1033. (Docket No. 7-3 at 10). For similar reasons, Al-Siddiqi is also considered a flight risk. Therefore, the denial of release on bond was narrowly tailored to achieve the government's legitimate interests in protecting national security, preventing flight during removal proceedings, and ensuring removal if ordered. *Ali*, 342 F. Supp. 2d at 774; *Kim* at 531. (Docket No. 7-3 at 9).

Aliens are also entitled to procedural due process during deportation proceedings. To determine whether Al-Siddiqi was denied procedural due process, the Court evaluates: (1) the nature of the private interest affected by the government action; (2) the risk of an erroneous decision through the use of the procedures currently employed and the probable value of additional procedural safeguards; and (3) the burden on the government that additional protections would entail. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Parra*, 172 F.3d at 958.

Al-Siddiqi's claim is unique because he *was* afforded due process by immigration authorities. Accordingly, it is difficult to see how his claim could rest on the denial of procedural due process. However, even if Al-Siddiqi was denied procedural due process, his

-13-

individual interest in personal liberty is secondary to the potential threat posed by alleged terrorist activity. *See Ali*, 342 F. Supp. 2d at 775 (individual's liberty interest may be subordinated to greater needs of society) (citing *Parra*, 172 F.3d at 958 and *United States v. Salerno*, 481 U.S. 739, 750-51 (1987)). Moreover, as discussed above, Al-Siddiqi has the opportunity to pursue further administrative relief, thus affording him additional due process protections.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Al-Siddiqi's motion for summary judgment [Docket No. 20] is **DENIED**; and
2. Al-Siddiqi's petition for a writ of habeas corpus [Docket No. 3] is **DENIED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this   30th   day of October, 2007.

                                            **SO ORDERED,**

                                            **s/ Rudolph T. Randa**
                                            **HON. RUDOLPH T. RANDA**
                                            **Chief Judge**